IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rene Ballesteros, Jr.,<br><br>               Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>               Respondents. | No. CV-12-1958-PHX-ROS (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE ROSLYN O. SILVER, SENIOR U.S. DISTRICT JUDGE:

      Rene Ballesteros filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree murder and child abuse, and the imposition of concurrent sentences, the longest being 35 years.  Ballesteros raises eight grounds for habeas relief:  (1) the prosecutor failed to disclose his intent to introduce evidence of prior bad acts; (2) the trial court failed to give a *Willits* instruction; (3) the trial court admitted expert testimony that did not comply with *Frye* standards; (4) the trial court refused to give a lesser-included offense instruction; (5) the trial court improperly admitted hearsay evidence and found an aggravating factor without a jury finding; (6) the prosecutor committed misconduct; (7) a significant change in the law was not applied to Ballesteros's case; and (8) he received the ineffective assistance of counsel. Respondents contend that the grounds raised are either unexhausted and procedurally defaulted, not reviewable in a federal habeas proceeding, or without merit.  The Court recommends that the petition be denied and dismissed with prejudice.

## BACKGROUND

The facts surrounding the convictions are summarized in the court of appeals memorandum decision:

> The State charged Ballesteros with first-degree murder and child abuse following the March 2002 death of thirty-two-month-old Jordan, the son of Ballesteros's girlfriend, Victoria. Ballesteros lived with Victoria and Jordan in Victoria's home. On the afternoon of March 21, 2002, Victoria went to work, leaving Jordan and Ballesteros's four-year-old daughter, A.B., in Ballesteros's care.
>
> According to Ballesteros, late in the evening he placed Jordan and A.B. in the bathtub to give them a bath and let them play. Ballesteros eventually took A.B. out of the bathtub to put her to bed. When he did so, he left Jordan alone in the bathtub, but drained the water level down to approximately two inches deep. Ballesteros testified that as he put A.B. to bed, he could hear Jordan's voice and could hear him playing in the bathtub. Ballesteros returned to the bathroom a few minutes later and found Jordan unresponsive and half in and half out of the bathtub with his head hanging over the edge. Ballesteros removed Jordan from the bathtub, called 911, and then attempted to perform CPR as instructed by the 911 operator. The first emergency responder arrived at approximately 11:30 p.m. When he arrived, Jordan was not breathing. Attempts to resuscitate Jordan at the scene and at the hospital were unsuccessful.
>
> The medical examiner and other physicians called to testify by the State determined that Jordan died of blunt force trauma to the head, and that the manner of death was homicide. A physician called by Ballesteros testified that in her opinion, Jordan drowned. Other physicians called by Ballesteros testified that Jordon did not die of a head injury.
>
> Ballesteros's first trial ended in a mistrial and dismissal without prejudice. The State subsequently indicted Ballesteros on the same charges and tried him a second time, resulting in conviction.

(Doc. 11, Exh B at 2-3).

On direct review, Ballesteros raised three issues:  (1) the prosecutor's failure to disclose his intent to use evidence suggesting that Ballesteros had previously inflicted head trauma upon the victim deprived Ballesteros of a fair trial; (2) the trial court abused its discretion in failing to give a requested *Willits* instruction; and (3) the trial court erred in admitting expert testimony that the victim was in a comatose state two hours before Ballesteros called 911 based on a scientific theory not generally accepted and recognized in the scientific community.  In the alternative, Ballesteros argued that this expert testimony should have been excluded because its unfair prejudicial effect substantially outweighed any probative value (Doc. 1, Exh A).  The Arizona Court of Appeals affirmed the convictions and sentences (Doc. 11, Exh B).  Ballesteros petitioned for review in the Arizona Supreme Court, arguing that the trial court erred by refusing to subject the expert testimony regarding the victim's condition in a comatose state to the *Frye* standard.  He also reurged his alternative argument that the trial court erred by refusing to exclude the testimony under Rule 403 of the Arizona Rules of Evidence "where the probative value was substantially outweighed by the danger of unfair prejudice" (Doc. 1, Exh C).  The Arizona Supreme Court denied review (Doc. 11, Exh C).

Ballesteros subsequently filed a notice of post-conviction relief (Doc. 11, Exh E). A review of the trial court docket indicates that appointed counsel reviewed the record and informed the court that he was unable to find any colorable claims.  Ballesteros subsequently filed a *pro se* petition for post-conviction relief, arguing six grounds for relief:  (1) he was denied a fair trial when the trial court refused to give lesser-included instructions; (2) the trial court erred in considering hearsay at sentencing; (3) the trial court considered aggravating factors not submitted to the jury; (4) he was denied a fair trial by prosecutorial misconduct, including the submission of opinion evidence without a *Frye* hearing; and (5) the trial court allowed the prosecutor to elicit evidence that the victim had vomited on previous occasions while in Ballesteros's care as evidence of prior bad acts.  He also argued that he received the ineffective assistance of counsel when his

attorney failed to act as follows: (1) object to the admission of evidence of the victim's prior vomiting while in Ballesteros's care as evidence of prior bad acts; (2) adequately argue issues regarding the lesser-included jury instructions; (3) request a *Willits* instruction; (4) produce evidence comparing Ballesteros's hand prints to the bruising found on the victim; and (5) subpoena the victim's grandmother to testify at trial (*Id.*, Exh E). The trial court summarily dismissed Ballesteros's petition, finding that claims one through five were precluded because they could have been or were raised on appeal.

In addition, the trial court denied his ineffective assistance claims on the merits (*Id.*, Exh G). In doing so, the trial court issued the following ruling:

> In order to raise a colorable claim of ineffective assistance of counsel a defendant must present evidence that the attorney's representation fell below that of the prevailing objective standards, and some evidence of a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceedings would have been different, i.e., prejudice. *See State v. Rosario*, 195 Ariz. 264, ¶ 23, 987 P.2d 226, 268 (App. 1999). Mere generalizations and unsubstantiated claims of ineffective assistance of counsel do not require evidentiary hearings. *State v. Borbon*, 146 Ariz. 392, 706 F.2d 718 (1985).
>
> Introduction of Evidence Regarding Vomiting episodes:
> A review of the record indicates that defense counsel made a tactical decision to introduce evidence of the child's past incidents of vomiting to show no prior head trauma and to support his claim of accidental drowning. He introduced evidence that the child's doctor had never found evidence of head trauma during the prior visits in which the child was alleged to have vomited in Defendant's care. Tactical decisions will not support a finding of ineffective assistance of counsel. Additionally, as the Court of Appeals noted, the introduction of this evidence was not prejudicial. (See Memo dec. at 10). Defendant has failed to demonstrate a colorable claim regarding defense counsel's decision to present this evidence.

Failure to argue against Lesser-Included Instructions:
Because Defendant was convicted of the greater offense, he can show no prejudice from the trial court's decision to provide lesser-included instructions on reckless and negligent child abuse. As a result, his claim of ineffective assistance of counsel must also fail.

Failure to Request a *Willits* Instruction:
The Court of Appeals, in reviewing the trial on appeal, found that the trial court did not err in failing to give a *Willits* instruction and found that lack of such instruction was not prejudicial. As such, Defendant has failed to demonstrate a colorable claim regarding the defense counsel's alleged failure to request such an instruction.

Failure to Introduce Evidence of Hand and Finger Measurements:
Defendant next asserts that trial counsel was ineffective for failing to present evidence of his hand/finger measurements for comparison to the bruises found on the child. However, Defendant's assertion, without more is insufficient to raise a colorable claim of ineffective assistance of counsel. He presents no affidavits, records, or other evidence that would support his claim that such evidence would have changed the outcome of the trial or that counsel's actions fell below what is generally required. As such, Defendant again fails to raise a colorable claim that would require a hearing on this matter.

Failure to Subpoena Lenora Rader:
Lastly, Defendant alleges that counsel was ineffective for failing to subpoena the victim's grandmother who would have testified that the child had fallen and hit his head prior to the day the child was left in Defendant's care. Once again, this Court need not review counsel's actions or inactions as a review of the record shows that this evidence was presented to the jurors through the child's father's testimony as well as a hospital nurse who confirmed that the child's grandmother had confirmed the fall. Defendant cannot show prejudice and has failed to raise a colorable claim of ineffective assistance of counsel.

(*Id.*).

**EXHAUSTION OF REMEDIES**

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini v. Stewart*, 249 F.3d 895, 898 -99 (9th Cir. 2001). A "general appeal to a constitutional guarantee," such as due process or a fair trial, is insufficient to achieve fair presentation. *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000). The exhaustion requirement will not be met where the Petitioner fails to fairly present his claims. *Roettgen*, 33 F.3d at 38.

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring). If remedies are available in state court, then the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. *Id.* However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989). The federal court may decline to consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his

1 noncompliance and actual prejudice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Further, a procedural default may occur when a Petitioner raises a claim in state court, but the state court finds the claim to be defaulted on procedural grounds. *Coleman*, 501 U.S. at 730-31. In such cases, federal habeas review is precluded if the state court opinion contains a plain statement clearly and expressly relying on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *See Harris*, 489 U.S. at 260. A state procedural default ruling is "independent" unless application of the bar depends on an antecedent ruling on the merits of the federal claim. *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S. 856 (2002). A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982)). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, just as in cases involving defaulted claims that were not fairly presented, federal habeas review of the claims is barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

"Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, ____U.S. ____, 132 S.Ct. 1309, 1315 (2012). A prisoner may show cause for default of an ineffective assistance claim by demonstrating that this claim of ineffective assistance of trial counsel is a substantial one, that the claim has merit. *Martinez*, 132 S.Ct. at 1318.

**DISCUSSION**

*Procedurally Defaulted Claims*

In Ground Four, Ballesteros contends that the trial court abused its discretion by refusing to provide lesser-included offense jury instructions. In Ground Five, Ballesteros alleges that the trial court erred by admitting hearsay evidence and by finding an aggravating factor without a jury determination. In Ground Six, he argues that the prosecutor committed misconduct, including the admission of opinion evidence without a *Frye* hearing. He raised each of these claims for the first time in his post-conviction proceedings, and the court found the claims precluded because they could have been raised on appeal. In addition, Ballesteros did not file a petition for review in the court of appeals. Because the court found the claims precluded, and because Ballesteros did not present the issues to the court of appeals, the claims are procedurally defaulted. *Swoopes*, 196 F.3d at 1010. In addition, Ballesteros cannot demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

In Ground Seven, Ballesteros argues that a significant change in the law was not applied to his case in violation of his fourteenth amendment rights. In his petition for post-conviction relief, he placed a check-mark on the pre-printed statement that relief was based on '[t]he abridgment of any other right guaranteed by the constitution or the laws of this state, or the constitution of the United States, including a right that was not recognized as existing at the time of the trial if retrospective application of that right is required." Assuming this constitutes a fair presentation of the claim, he never petitioned for review, making the claim procedurally defaulted. *Swoopes*, 196 F.3d at 1010. In addition, Ballesteros cannot demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

In Ground Eight, Ballesteros alleges that he received the ineffective assistance of counsel. He raised this specific claim in his petition for post-conviction relief, but failed to raise the claim in a petition for review, making it procedurally defaulted. *Swoopes*, 196 F.3d at 1010. Ballesteros argues in his reply that *Martinez* should apply in this case

as an excuse for his default because he received the ineffective assistance of counsel "at trial and in the first phase of his state collateral proceedings." *See* Doc. 14 at 9. The Court finds that *Martinez* does not excuse the default in this case. The holding in *Martinez* is limited to attorney errors in the initial-review collateral proceedings. The holding in *Martinez* "does not concern attorney errors in other kinds of proceedings, including . . . petitions for discretionary review in a State's appellate courts." *Martinez*, 132 S.Ct. at 1320. Ballesteros cannot demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

*Merits Discussion*

In Ground One, Ballesteros contends that the prosecutor denied him a fair trial by failing to disclose that she intended to present evidence that Ballesteros had previously inflicted head trauma on the victim. On direct review, the court of appeals ruled that the trial court did not abuse its discretion by refusing to declare a mistrial or grant a new trial based on an alleged violation of Rule 15.1(b)(7) of the Arizona Rules of Criminal Procedure. This Court's review is limited to federal constitutional issues. A claim that the admission of evidence violated state procedural rules is not reviewable in a federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, the Court's review is limited to whether the admission of the evidence violated Ballesteros's due process rights.

The Court concludes that the admission of the evidence did not result in a violation of Ballesteros's due process rights. As the court of appeals pointed out, Ballesteros first raised the issue of prior vomiting incidents in his opening statements, and again in his cross-examination of the victim's mother. He also elicited testimony from the victim's pediatrician that she had not received any report of vomiting at a January visit. She also testified that at both the January and February visits, she diagnosed the victim with ear infections, and that nothing in her examinations indicated that the victim suffered head injuries. The court of appeals went on to state that even if the State had violated Rule 15.1(b)(7) by not disclosing its intent to introduce the evidence, Ballesteros

1  could not have been surprised by it because he knew from police reports that the victim's
2  mother had claimed that the victim was in Ballesteros's care both times the prior
3  vomiting had occurred.  Therefore, the court concluded that nothing would have
4  prevented Ballesteros from moving *in limine* to preclude the introduction of the evidence.
5  Finally the court of appeals noted that Ballesteros had not shown any prejudice because
6  the pediatrician's testimony effectively negated any implication that the victim had
7  suffered a head injury while in Ballesteros's care, which he also emphasized in closing
8  argument.

9  In Ground Two, Ballesteros argues that the trial court abused its discretion by
10 refusing to provide a *Willits* instruction regarding a bottle of vodka and a beaker of blood.
11 In order to be entitled to a *Willits* instruction, a defendant must prove both that the State
12 failed to preserve exculpatory, material, accessible evidence, and resulting prejudice.  *See*
13 *Arizona v. Fulminante*, 193 Ariz. 485, 503 (1999).  The *Willits* instruction is based on
14 state law, and the court of appeals found as a matter of state law that Ballesteros was not
15 entitled to a *Willits* instruction.  Thus, the decision is not reviewable in a federal habeas
16 proceeding.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  In addition, there is no clearly
17 established federal law requiring a *Willits* instruction.  To establish a due process
18 violation when the State fails to preserve evidence that is only potentially exculpatory,
19 Ballesteros must demonstrate that the State acted in bad faith.  *Arizona v. Youngblood*,
20 488 U.S. 51, 57-58 (1988).

21 Ballesteros told police during his initial interview that he had heard a noise in the
22 kitchen the night before, and later saw an open bottom cupboard with a bottle of soda, a
23 bottle of Kahlua, and a bottle of vodka.  That is the only mention he made to the police at
24 that time about alcohol.  When the police searched the house that day, they had no reason
25 to suspect that the victim had ingested alcohol.  It was not until the autopsy report was
26 issued several weeks later that it was revealed for the first time that the victim had a
27 blood alcohol level of .04.  Ballesteros then requested that the State obtain and preserve
28 the alcohol bottles observed in the cupboard.  The State eventually obtained the Kahlua

bottle and other items, but the vodka bottle was no longer there. When the State first learned about the potential materiality of the bottle, it did not have the bottle in its possession. For this reason, the court of appeals could not say that the State had failed to preserve material evidence, thus entitling Ballesteros to a *Willits* instruction. The court also was not persuaded that the presence of a child's fingerprints on the bottle would have tended to exonerate Ballesteros. Finally, the court of appeals ruled that Ballesteros had failed to demonstrate any resulting prejudice. There was no evidence that either of the children had opened the bottle or drank from it. Testimony from the victim's mother indicated that the victim was unable to get his own drink, could not pour a drink, and could not pour anything into a cup. Ballesteros corroborated this testimony. Ballesteros has not established any due process violation.

Ballesteros never requested a *Willits* instruction regarding the beaker of blood containing blood from the victim's skull. Therefore, the court of appeals reviewed the trial court's ruling to determine if it was fundamental error. There was conflicting evidence about whether the blood was fresh, as the State's experts opined, or from an old hemorrhage, as the defense experts contended. The court of appeals concluded that the experts did not need to conduct independent tests on the blood in order to render their respective opinions. The defense experts were able to use slides of the victim's tissue to support their conclusion that the blood was old. The court of appeals concluded that the trial court did not commit fundamental error by failing to *sua sponte* give a *Willits* instruction, and that Ballesteros suffered no prejudice from the absence of the instruction.

In Ground Three, Ballesteros argues that the trial court improperly admitted certain expert medical testimony that Jordan was in a comatose state two hours before Ballesteros called 911, based upon "neuronal changes" observed in the victim's tissue and "gastric emptying." He argues that the opinion is based on a novel scientific principle not generally accepted in the scientific community, and that it should have been excluded because its unfair prejudicial effect substantially outweighed any probative value. The court of appeals initially noted that *Frye* was inapplicable because the opinion

was based upon the expert's own observation, experience, and study, and therefore the validity of such an opinion is tested by interrogation of the witness, quoting *Logerquist v. McVey*, 196 Ariz. 470, 490 (2000).

The court of appeals also concluded that the trial court properly permitted the jury to determine the weight to be given this evidence, having heard contradicting opinions from other witnesses, including two witnesses called by the State. Finally, the court of appeals found that Ballesteros had not suffered prejudice from the admission of this particular part of the expert's opinion. The court reasoned that his opinion regarding the timing of the victim's injury was not based solely on neuronal changes and gastric emptying, but also on the presence of a fresh subdural hematoma, fresh injury sites, and the fact that the victim had been reported to have been functioning normally on the night of the injury.

As with Grounds One and Two, the court of appeals analyzed the issue based on state evidentiary law. Thus, the decision is not reviewable in a federal habeas proceeding. *Lewis*, 497 U.S. at 780, unless the ruling "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-202 (1977)). The Court concludes that the admission of such testimony did not violate due process. It was offered primarily to establish the credibility of the witnesses, including Ballesteros, who testified at trial. In addition, the expert's own credibility was challenged through cross-examination. Moreover, other physicians, including other experts testifying for the State, also challenged the expert's opinion. Ballesteros has not established that the admission of this evidence violated any fundamental right.

**IT IS THEREFORE RECOMMENDED** that Rene Ballesteros's petition for writ of habeas corpus be **denied and dismissed with prejudice** (Doc. 1).

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** either because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the

ruling debatable, or because Ballesteros has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of  Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 9th day of April, 2014.

_____
David K. Duncan
United States Magistrate Judge